**CITY OF LEE'S SUMMIT, Appellant,**

v.

**MISSOURI PUBLIC ENTITY RISK MANAGEMENT, Respondent.**

**No. WD 74967.**

Missouri Court of Appeals, Western District.

Dec. 26, 2012.

Catherine C. Whittaker, for appellant.

Michael G. Berry, Jefferson City, for respondent.

Before Division Three: ALOK AHUJA, Presiding Judge, VICTOR C. HOWARD, Judge and GARY D. WITT, Judge.

VICTOR C. HOWARD, Judge.

The City of Lee's Summit, Missouri, (City) appeals from summary judgment entered in favor of Missouri Public Entity Risk Management (MOPERM) declaring that MOPERM had no duty to defend or indemnify the City in a § 1983 suit brought by Theodore White against the City's employee. The judgment is affirmed.

## Background

The material facts are uncontroverted and are as follows. In April 1998, following an investigation by Lee's Summit Detective Richard McKinley, Lee's Summit police arrested Theodore White on suspicion of molesting his adopted daughter. White's wife, Tina, divorced White in 1998

and married McKinley in 2000.[1] White was tried three times in Missouri state courts for the crime. At his first trial in February 1999, he was convicted of twelve counts of sexual abuse. This court reversed White's conviction in April 2002 finding that McKinley and the prosecution failed to disclose before trial that McKinley and Tina were romantically involved. *State v. White*, 81 S.W.3d 561, 570–71 (Mo. App. W.D.2002). White's second trial in May and June 2004 resulted in a hung jury. At his third trial in January and February 2005, White was acquitted.

In March 2005, White sued McKinley, Tina, the City, and the Lee's Summit Chief of Police in federal court. In his seven count amended complaint, he asserted § 1983 claims for malicious prosecution, false arrest, use of unreliable and fraudulent investigatory techniques, procurement of unreliable and fabricated evidence, wrongful conviction and imprisonment, conspiracy, suppression of exculpatory evidence, and violation of policies, practices, and procedures. He also asserted common law claims for false arrest, wrongful incarceration and continued detention, and malicious prosecution. Two of the central allegations in the case were the failure to disclose the romantic relationship that developed between McKinley and Tina during the criminal investigation and the failure to preserve the daughter's diary as evidence.

The case proceeded to trial against McKinley and Tina only, and two claims were submitted to the jury.[2] The first verdict-directing instruction asked the jury to decide whether McKinley caused White to be deprived of his federal constitutional right to a fair trial by failing to disclose to the prosecutors evidence material to the defense or failing to preserve evidence material to the defense. The second verdict-director asked the jury to decide if McKinley and Tina conspired to deprive White of his federal constitutional right to a fair trial by reaching an agreement to fail to disclose to the prosecutors evidence material to the defense or cause the prosecutors not to disclose evidence material to the defense or fail to preserve evidence material to the defense. The jury was instructed that "[e]vidence is material if there is a reasonable probability that, had the evidence been disclosed to the accused, the result of the proceeding would have been different." The jury returned a verdict in favor of White on both counts assessing compensatory damages in the amount of $14,000,000 and punitive damages against both McKinley and Tina in the amount of $1,000,000 each.

MOPERM is a liability risk sharing pool for Missouri governmental entities and offers liability and property damage coverage to local governmental agencies. It issued a Memorandum of Coverage to the City with coverage periods from July 1, 2004, to January 1, 2005, and from January 1, 2005, to January 1, 2006. The City paid all premiums due and owing under the Memorandum of Coverage. MOPERM also issued retroactive coverage for the period July 1, 2001, through June 30, 2004. MOPERM charged and the City paid $220,381 for the three years of retroactive coverage.

The Memorandum of Coverage provides coverage for claims against the City and its employees as follows:

---

1. For purposes of clarity, this opinion sometimes refers to persons by their first or last name only. No disrespect is intended.

2. Summary judgment was granted in favor of McKinley and Tina on the other constitutional claims against them. The claims against the City and the Chief of Police and the common law tort claims against the McKinleys were dismissed.

on causes of action other than those established by Missouri law and for claims against public officials and employees, MOPERM will pay the ultimate net loss which the Covered Party shall become obligated to pay by reason of liability . . . for damages because of:

*COVERAGE C—PUBLIC OFFICIALS ERRORS AND OMISSIONS LIABILITY*

*COVERAGE D—PERSONAL INJURY LIABILITY*

to which this memorandum applies, caused by or arising out of an occurrence.

Under the Memorandum of Coverage, "Public Officials Errors and Omissions means any and all breaches of duty by the Covered Party arising from negligent action or inaction, mistake, misstatement, error, neglect, inadvertence, or omission by the Covered Party in the discharge of duties with the Member Agency." "Personal Injury means (a) false arrest, malicious prosecution, or willful detention; (b) liable, slander or defamation of character; (c) invasion of privacy; (d) wrongful entry or eviction, or other invasion of the rights of private occupancy; (e) assault and battery; and (f) discrimination prohibited by law or a violation of federal civil rights laws." The Memorandum of Coverage defines "occurrence" as:

as respects COVERAGES C and D means an act, accident, event, during the coverage period that results in injury or damages; as respects COVERAGES A, B, C and D all injuries or damages arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

On March 15, 2005, the City advised MOPERM of the claims asserted by White. MOPERM denied the claim the next day stating that the occurrence took place outside the coverage period.

The City filed the instant action against MOPERM in September 2008. In its two-count petition, the City asserted a count for breach of contract seeking $4,000,000. In Count II, the City sought a declaration that MOPERM was required to defend and indemnify the City for White's claims. Thereafter, the City filed a motion for partial summary judgment arguing that there was at least one occurrence during the time that MOPERM's policy was in effect triggering MOPERM's duty to provide the City with coverage in connection with White's case. MOPERM opposed the City's motion and eventually filed its own cross motion for complete summary judgment arguing that there was no occurrence triggering a duty to provide the City with coverage within the policy period. The trial court granted summary judgment in favor of MOPERM. This appeal by the City followed.

### Standard of Review

Appellate review of the grant of summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 377. The record is reviewed in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. *Id.* at 376. Facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the nonmoving party's response to the summary judgment motion. *Id.*

A defending party may establish a right to judgment as a matter of law by showing

any one of the following: (1) facts that negate any one of the elements of the claimant's cause of action, (2) the non-movant, after an adequate period of discovery, has not and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements, or (3) there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *Id.* at 381.

Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed. *Id.* The non-moving party may not rely on mere allegations and denials of the pleadings but must use affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate the existence of a genuine issue for trial. *Id.*

### Discussion

■ The sole issue in this case is whether there was an "occurrence" within the policy period triggering MOPERM's duty to defend and indemnify under the City's policy. The City argues that the occurrence date was the date of exoneration. Alternatively, it contends that, based on White's allegation that the defendants withheld exculpatory evidence at each of his three criminal trials and his injuries were ongoing or repeated over a period of several years, there were multiple triggering events. MOPERM contends that the date triggering coverage under the policy was the date when White was first damaged, which was prior to the effective dates of the policy.

■ A duty to defend is broader than a duty to indemnify. *Penn–Star Ins. Co. v. Griffey,* 306 S.W.3d 591, 596 (Mo.App.

W.D.2010). An insurance company has a duty to defend where the insured is exposed to potential liability based on the facts known at the outset of the case no matter how unlikely it is that the insured will be found liable. *Id.* A duty to defend is determined by comparing the policy language with the allegations in the complaint. *Id.* at 597. To be relieved of this duty, the insurer must demonstrate that there is no possibility of coverage. *Truck Ins. Exch. v. Prairie Framing, LLC,* 162 S.W.3d 64, 79 (Mo.App. W.D.2005). An insurer does not have a duty to defend where the underlying claim is outside the coverage of the insurance policy. *Wood v. Safeco Ins. Co. of Am.,* 980 S.W.2d 43, 46 (Mo.App. E.D.1998).

■ An insurer's duty to indemnify, on the other hand, only arises if the third party is successful in the underlying action. *Shelter Mut. Ins. Co. v. Ballew,* 203 S.W.3d 789, 792 n. 4 (Mo.App. W.D.2006). A duty to indemnify is "determined by the facts as they are established at trial or as they are finally determined by some other means, for example through summary judgment or settlement." *Sawyer v. Bi–State Dev. Agency,* 237 S.W.3d 617, 621 (Mo.App. E.D.2007)(internal quotes and citation omitted).

■ As the insured, the City bears the burden of proving coverage under the policy. *Truck Ins. Exch.,* 162 S.W.3d at 80. MOPERM, the insurer, bears the burden of proving the applicability of any coverage exclusion. *Id.*

■ An insurance policy must be construed to give effect to the intent of the parties. *Golden Rule Ins. Co. v. R.S.,* 368 S.W.3d 327, 334 (Mo.App. W.D.2012). The insurance policy must be construed as a whole, and the language of the policy is given its plain and ordinary meaning. *Id.*

Ambiguities in the policy are construed in favor of the insured. *Id.*

An occurrence policy provides "coverage for an event that occurs during the policy period, regardless of when a claim is asserted." *Grissom v. First Nat. Ins. Agency,* 371 S.W.3d 869, 874 n. 4 (Mo.App. S.D.2012)(internal quotes and citation omitted). The general rule in Missouri is that the time of an occurrence of an event in an indemnity policy is not when the wrongful act is committed but when the complaining party is actually damaged. *Am. Family Mut. Ins. Co. v. McMullin,* 869 S.W.2d 862, 864 (Mo.App. E.D.1994); *Kirchner v. Hartford Acc. & Indem. Co.,* 440 S.W.2d 751, 756 (Mo.App. 1969). For an event to be a covered occurrence, the time of first actual damage must be within the effective dates of the policy. *McMullin,* 869 S.W.2d at 864.

The City is correct that Missouri courts have not addressed the application of these general rules in the context of a § 1983 civil rights action for deprivation of one's procedural due process. However, cases that have addressed when insurance coverage is triggered for civil rights claims have found that such claims seeking damages for constitutional injuries resulting from arrest, conviction, and incarceration are analogous to claims for malicious prosecution. *See Genesis Ins. Co. v. City of Council Bluffs,* 677 F.3d 806, 815–16 (8th Cir. 2012)(§ 1983 claim in nature of malicious prosecution); *City of Erie, Pa. v. Guaranty Nat. Ins. Co.,* 109 F.3d 156, 165 (3d Cir.1997) (§ 1983 claims as well as state law claims for false arrest and imprisonment, malicious prosecution, spoliation of evidence, intentional infliction of emotional distress, defamation, abuse of process, willful misconduct, prima facie tort, conspiracy tort, negligence and gross negligence); *Am. Safety Cas. Ins. Co. v. City of Waukegan,* 776 F.Supp.2d 670, 711–12 (N.D.Ill.

2011)(§ 1983 action alleging false arrest, false imprisonment, and malicious prosecution); *Sarsfield v. Great Am. Ins. Co. of New York,* 833 F.Supp.2d 125, 132 (D.Mass.2008) (eight federal claims based on § 1983 including suppression of exculpatory evidence). In fact, in two cases litigating indemnity coverage in Tina's homeowner's insurance policies for White's lawsuit, the District Court for the Western District of Missouri found, "The continuing conduct required in conspiring to deprive someone of the right to a fair trial poses a risk of injury similar to that posed by the continuing conduct of malicious prosecution." *Am. States Preferred Ins. Co. v. McKinley,* 2009 WL 1139122, *8 (W.D.Mo. 2009). *See also Allied Prop. & Cas. Ins. Co. v. McKinley,* 2009 WL 2408376 (W.D.Mo.2009). Similarly, the allegations in White's amended complaint, and specifically his § 1983 claims for deprivation of his federal constitutional right to a fair trial and for conspiracy to deprive him of his right to a fair trial based on the failure to disclose or preserve exculpatory evidence, were in the nature of malicious prosecution for purposes of insurance coverage. The claims sought damages for injuries resulting from White's arrest, conviction, and incarceration.

Missouri follows the majority view that in the context of insurance, malicious prosecution occurs upon the institution of the underlying action. *Hampton v. Carter Enters., Inc.,* 238 S.W.3d 170, 176 (Mo.App. W.D.2007); *McMullin,* 869 S.W.2d at 864. "In a criminal or civil prosecution that is malicious, injury begins to flow from when the complaint is filed." *Id.* at 865. The defendant's reputation is injured and legal expenses are incurred when the judicial process is invoked against him. *Hampton,* 238 S.W.3d at 177; *McMullin,* 869 S.W.2d at 864. The City asks this court to follow a minority of

courts that have held the tort of malicious prosecution occurs on the date when the underlying suit is terminated in favor of the victim and his claim for malicious prosecution arises. *See Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 344–45 (7th Cir. 2010); *Am. Safety Cas. Ins. Co.*, 776 F.Supp.2d at 711–12; *Sauviac v. Dobbins*, 949 So.2d 513, 519–20 (La.Ct.App.2006). The Eastern District in *McMullin*, however, rejected this view finding it inconsistent with the general rule that for insurance purposes, a tort accrues when the complaining party is first actually damaged. *McMullin*, 869 S.W.2d at 865.

Here, the underlying criminal charges were filed against White in April 1998. Therefore, White's injury occurred for insurance purposes in 1998. In other words, White's injury did not occur for insurance purposes during the policy periods July 1, 2001, to January 1, 2006. Accordingly, MOPERM had no duty to defend or indemnify since the occurrence arose outside the policy period.

Alternatively, the City argues that, based on White's allegation that McKinley and Tina withheld exculpatory evidence at each of his three criminal trials and his injuries were ongoing or repeated over a period of several years, there were multiple triggering events. "Under a 'multiple trigger' approach, an insurance company has a duty to defend and indemnify if it has issued a policy in effect at any time during the continuing tort." *Genesis*, 677 F.3d at 815 (internal quotes and citation omitted). The multiple trigger theory has been adopted in very limited circumstances, such as asbestosis and other "latent" or gradual injury cases, where the injuries caused by exposure do not manifest themselves until a substantial time after the exposure causing the injury. *City of Erie*, 109 F.3d at 164; *Sarsfield*, 833 F.Supp.2d at 131. The theory was adopted out of concern that insurance companies facing countless future claims would terminate coverage during asbestosis' long latency period. *Id.*

The cases cited by the City as support for its proposition that Missouri law recognizes that there may be multiple triggering occurrences for continuing or repeated injuries utilize the theory applied in asbestosis cases. *See Nationwide Ins. Co. v. Central Mo. Elec. Coop. Inc.*, 278 F.3d 742 (8th Cir.2001)(where defective transformer installed on dairy farm caused multiple, distinct injuries to farmer over a period of years, the injuries triggered multiple policies in place from 1985 through 1991 under either an injury in fact or an exposure theory); *Continental Cas. Co. v. Med. Protective Co.*, 859 S.W.2d 789, 792 (Mo.App. E.D.1993) (where loss was caused not by a single event but by repeated acts of negligence by dentist, loss should be apportioned among consecutive insurers by applying exposure theory utilized in cases of progressive disease such as asbestosis). The City acknowledges, however, that no Missouri cases have adopted multiple triggering occurrences in the context of an action for malicious prosecution or due process violations.[3] Courts that have analyzed malicious prosecution and § 1983 claims have found that the rationale under-

3. The appellants in *Hampton* argued for separate triggering dates for coverage of a claim of malicious prosecution based on instigating a lawsuit and a claim for malicious prosecution based on continuing a lawsuit. *Hampton*, 238 S.W.3d at 176. They asserted that the triggering date for a claim of a malicious prosecution based on the continuation of a lawsuit should reflect the "continual nature" of the tort and should be a series of dates. *Id.* at 176–77. The *Hampton* court rejected the argument and found that in keeping with *McMullin*, the triggering date for coverage of such claim should be limited to the date on which the party first continued the malicious prosecution. *Id.* at 177.

lying application of the multiple trigger theory is not well-suited in those cases, where any injury was evident from the outset. *Genesis,* 677 F.3d at 815–16; *City of Erie,* 109 F.3d at 165; *Sarsfield,* 833 F.Supp.2d 125 at 132.

> In malicious prosecution cases, there is no interval between arrest and injury that would allow an insurance company to terminate coverage. The plaintiff faces incarceration, humiliation, and damage to reputation as soon as charges are filed. Perhaps for this reason, no federal or state court has adopted the multiple trigger theory in malicious prosecution cases.

*City of Erie,* 109 F.3d at 165. *See also Genesis,* 677 F.3d at 815–16; *Sarsfield,* 833 F.Supp.2d 125, 132 (both quoting *City of Erie,* 109 F.3d at 165). *But See Sauviac,* 949 So.2d at 519 (holding that exoneration is the triggering date for insurance coverage and that dismissal of malicious administrative and judicial proceedings in 1997 and 1998 were deemed occurrences under policies in effect those years). Because White suffered injury when the charges were filed against him, the circumstances justifying application of a multiple trigger are absent. MOPERM did not have an insurance contract with the City in 1998 when the underlying charges were filed against White, therefore, it did not have a duty to defend and indemnify the City against White's lawsuit. MOPERM was entitled to judgment as a matter of law, and the trial court properly entered summary judgment in its favor.

The judgment is affirmed.

All concur.