Nathan STOLOV, Appellant,

v.

JACKSON COUNTY SCHOOL DISTRICT C-1 OF HICKMAN MILLS, JACKSON COUNTY, Missouri, Respondent.

No. WD 74784.

Missouri Court of Appeals,
Western District.

June 11, 2013.

Application for Transfer to Supreme
Court Denied July 30, 2013.

Application for Transfer Denied
Oct. 1, 2013.

---

1. Unless otherwise indicated, all further statutory references are to RSMo 2000.

Mark V. Dugan and Heather J. Schlozman, Overland Park, KS, for Appellant.

Robert O. Jester, Jessica M. Bernard, and Wesley J. Carrillo, Kansas City, MO, for Respondent.

Before Division Two: ALOK AHUJA, Presiding Judge, and KAREN KING MITCHELL and ANTHONY REX GABBERT, Judges.

KAREN KING MITCHELL, Judge.

Nathan Stolov appeals the trial court's grant of summary judgment in favor of his former employer, Jackson County School District C–1 of Hickman Mills (the District), on Stolov's breach of contract claim, which alleged that the District breached its contract with Stolov when it decided not to renew his teaching contract without first giving him notice and a hearing, as required by the Missouri Teacher Tenure Act (the Act). Because Stolov was not a permanent teacher under the Act, he was not entitled to the process he claims was required; thus, the District did not breach his contract, and the trial court's grant of summary judgment is affirmed.

### Factual Background

After obtaining his teaching certificate in 2001, Stolov began teaching full-time for the District in the 2002–2003 school year; he had previously worked for the District as a substitute teacher in 1997 and 1998. He continued to work as a full-time teacher for the District during the 2003–2004, 2004–2005, 2005–2006, and 2006–2007 school years. The District chose not to renew Stolov's teaching contract for the 2007–2008 school year without providing him notice or an opportunity for a hearing before the non-renewal decision was made.

Before teaching at the District, Stolov was employed in an instructional capacity

with several entities. Specifically, Stolov taught for the University of Missouri–Kansas City (UMKC); Metropolitan Community College; Kansas City Kansas Community College; Archbishop O'Hara High School; Christ the King Elementary School; Baker University; YWCA; YMCA; the District (as a substitute teacher); Child Care Services, Inc.; and Clay County Juvenile Detention Center. Stolov's total time spent working in these prior instructional positions was just under nine years. And, with the exception of UMKC, each of these positions lasted approximately one year or less.

After learning of the District's decision not to renew his contract, Stolov filed suit against the District for breach of contract on the theory that, beginning with the 2006–2007 school year, Stolov was a permanent teacher under the Act and, therefore, entitled to notice and an opportunity for a hearing before the District subjected him to non-renewal. Stolov contended that he was entitled to one year of credit toward permanent teacher status based upon his prior instructional experiences. And, with the additional one-year credit, the 2006–2007 school year would effectively have been his sixth successive year teaching for the District, which would have rendered him a permanent teacher under the Act and entitled him to certain procedural protections before he could be subjected to non-renewal.

The District moved for summary judgment, arguing that Stolov was not a permanent teacher during the 2006–2007 school year in that his prior instructional experiences failed to meet the statutory requirements to qualify him for any credit toward permanent teacher status; thus, the 2006–2007 school year was Stolov's fifth, rather than sixth, successive year with the District, which rendered him a probationary teacher under the Act and

not entitled to the added protections given to permanent teachers.

The circuit court agreed with the District that Stolov's prior employment did not entitle him to any credit toward permanent teacher status, and, thus, he was not entitled to the protections afforded a permanent teacher under the Act at the time of his non-renewal. Accordingly, the circuit court granted the District's motion for summary judgment. Stolov appeals.

### Standard of Review

"Appellate review of the grant of summary judgment is de novo." *City of Lee's Summit v. Mo. Pub. Entity Risk Mgmt.*, 390 S.W.3d 214, 218 (Mo.App. W.D.2012). "Summary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist." *Id.* "The record is reviewed in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record." *Id.*

> A defending party may establish a right to judgment as a matter of law by showing any one of the following: (1) facts that negate any one of the elements of the claimant's cause of action, (2) the non-movant, after an adequate period of discovery, has not and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements, or (3) there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.* at 218–19.

### Analysis

Stolov's only claim on appeal is that the circuit court erred in granting summary judgment in favor of the District insofar as

the District was not entitled to judgment as a matter of law. Stolov asserts, as he did below, that his prior instructional experiences qualified him for one year of credit toward permanent teacher status, thus rendering him a permanent teacher at the start of the 2006–2007 school year. Accordingly, he claims that the District breached his teaching contract when the District decided not to renew it for the 2007–2008 school year without first giving Stolov notice of its intent to not renew and an opportunity for a hearing, as is required by the Act. We disagree.

This case boils down to a single legal question: Did Stolov's prior instructional experiences qualify for a one-year credit toward his permanent teacher status? If not, Stolov concedes that he was simply a probationary teacher during the 2006–2007 school year and the District's failure to provide him with notice or an opportunity for a hearing before making the non-renewal decision did not constitute a breach of contract.[1]

## A. Permanent versus Probationary Teachers

The Act is codified in sections 168.102 through 168.130 of the Missouri Revised Statutes. § 168.102.[2] The Act identifies two different kinds of teachers to which it applies: permanent teachers and probationary teachers. § 168.104(4)–(5). A permanent teacher, in relevant part, is

> any teacher who ... is ... employed as a teacher in the same school district for five successive years and who ... thereafter continues to be employed as a teacher by the school district ... and who continues thereafter to be employed as a certificated employee by the school district....

§ 168.104(4). A probationary teacher is "any teacher as herein defined who has been employed in the same school district for five successive years or less." § 168.104(5).

■■■ The distinction between permanent and probationary teachers relevant to this appeal is that permanent teachers are

---

1. Stolov also argues that, even if he was considered a probationary teacher, the District still breached the contract by failing to provide him with certain procedural protections afforded probationary teachers under the Act when their termination is based upon incompetence. But Stolov never raised this claim below. " 'Claims [that] were not presented to the [trial] court cannot be raised for the first time on appeal.' " *Stoner v. Dir. of Revenue,* 358 S.W.3d 514, 520 n. 12 (Mo.App. W.D. 2011) (quoting *Amrine v. State,* 785 S.W.2d 531, 535 (Mo. banc 1990)). "To allow an argument to be made for the first time on appeal deprives the trial court of its opportunity to thoughtfully consider and make a ruling on the argument." *Id.* Thus, we will not review Stolov's additional claim.

Yet even if we were to examine the merits of Stolov's unpreserved claim, we would determine that he is not entitled to relief insofar as the procedural protections he seeks arise only when a probationary teacher is terminated for incompetence, as opposed to any other reason. § 168.126.2, RSMo Cum.Supp.2012.

The only way for a probationary teacher to know the underlying reason for his termination is if he files a specific request with the school board. *Id.* In the absence of a specific request, the school board is under no obligation to inform the probationary teacher of its reasoning. *Id.; see also Smith v. King City Sch. Dist. R–1,* 990 S.W.2d 643, 646 (Mo.App. W.D.1998). Here, the record does not support the notion that Stolov ever requested the board to provide him with a reason for termination. Accordingly, it is impossible to know whether the board based its decision upon Stolov's perceived incompetence or some other unstated reason. Absent an indication that his termination was due to incompetence, he was not entitled to the written statement and an opportunity to correct his fault, as provided for probationary teachers under the Act.

2. All statutory references are to RSMo 2000, as updated through the 2012 Cumulative Supplement, unless otherwise noted.

afforded considerably more procedural protections than are probationary teachers before a school board is allowed to terminate their teaching contracts. Specifically, before the indefinite contract of a permanent teacher can be terminated upon one of six statutorily specified grounds,[3] a school board must serve the permanent teacher with "written charges specifying with particularity the grounds alleged to exist for termination of such contract, notice of a hearing on [the] charges and a hearing by the board of education on [the] charges if requested by the teacher." § 168.116.1. For probationary teachers, on the other hand, "a school board may refuse to renew the contract ... for any reason or no reason, as long as the non-renewal is not based on some ground impermissible under the Constitution." *Smith v. King City Sch. Dist. R–1*, 990 S.W.2d 643, 646 (Mo.App. W.D.1998). And the only procedural protection afforded a probationary teacher is that the school board must notify him of its decision not to renew his contract no later than the fifteenth day of April, and, *only upon request*, must the board provide a concise statement of the reason or reasons for the termination. § 168.126.2.

Stolov's success on his breach of contract claims turns on whether he was a permanent or probationary teacher at the time of his non-renewal.

### B. The Waiver Provision

At issue in this appeal is a waiver provision contained within the definition of probationary teacher, which provides for an additional year of credit toward permanent teacher status under certain conditions: "In the case of any probationary teacher who has been *employed in any other school system as a teacher* for two or more

years, the board of education shall waive one year of his probationary period...." § 168.104(5) (emphasis added). Thus, to qualify for the waiver, one must have been employed (1) in a school system (2) as a teacher (3) for two or more years.

If the waiver provision applied to Stolov, then he was a permanent teacher and entitled to additional procedural protections at the time of his non-renewal. If the waiver provision did not apply, then he was merely a probationary teacher, with no right to contract renewal. *Smith*, 990 S.W.2d at 646 ("A probationary[ ] teacher has no right to renewal of his or her contract and no property interest in renewal arises.").

### C. Stolov's past experiences were not "as a teacher," as is required to invoke the waiver provision.

■ Stolov contends that, because he was employed in a teaching capacity in other "school systems" for nearly nine years, the board was required to waive one year of his probationary period, which would render him a permanent teacher at the time of his non-renewal. The District argues, however, that Stolov's prior experiences do not qualify for the waiver provision because he failed to meet the statutory definition of "teacher" during those prior experiences. We agree with the District.

Central to our analysis is the interplay between the phrase, "any other school system," and the word, "teacher," in the waiver provision.

■ Section 168.104(7) defines "teacher" as "any employee of a school district ... regularly required to be certified under laws relating to the certification of teachers ... including certified teachers

---

**3.** § 168.114.1 (identifying six grounds upon which an indefinite contract may be terminated).

who teach at the prekindergarten level . . . within a prekindergarten program in which no fees are charged to parents or guardians." "[T]he source of the certification requirement must be the statute, specifically sections 168.011, and 168.081, and not merely a requirement of the school board or employment contract." *Sealey v. Bd. of Educ.*, 14 S.W.3d 597, 599 (Mo.App. E.D.1999). "To be a 'teacher' as defined by statute, one must *both* possess a valid certificate and perform the duties for which the statutes require a certificate." *Id.* at 600.

Section 168.011.1 provides that "[n]o person shall be employed to teach in any position in a public school until he has received a valid certificate of license entitling him to teach in that position." Section 168.081(1) provides that "[a]fter September 1, 1988, no person without a valid Missouri certificate shall . . . [e]ngage in the practice of teaching or the performance of education duties in grades kindergarten through twelve in any public school in the state . . . ."

██ Because the only positions "regularly required to be certified under laws relating to the certification of teachers" are those in public schools with grades kindergarten through twelve, to be considered a teacher under section 168.104(7), one must: (1) teach in a public school, (2) in grades kindergarten through twelve, and (3) have a valid teaching certificate. *See Sealey*, 14 S.W.3d at 600. And, accordingly, to fall within the waiver provision of section 168.104(5), a person's past teaching experiences "in any other school system" must have been (1) in public schools, containing grades kindergarten through twelve, or in a prekindergarten program in which no fees are charged to parents or guardians; (2) pursuant to the authority of a valid teaching certificate; and (3) of at least a two-year duration.[4]

Here, it is undisputed that Stolov did not obtain his teaching certificate until 2001; thus, if the word "teacher" as used in the waiver provision, follows the definition of "teacher" in section 168.104(7), Stolov did not qualify for the waiver because he could not have been a "teacher" before 2001. The only experiences he had after receiving his teaching certificate, and before commencing his full-time employment with the District, were when he taught at Christ the King Elementary School during the 2001–2002 school year, and the Clay County Juvenile Detention Center during the summer of 2002. These experiences, however, did not meet the definition of "teacher" as set out in section 168.104(7), because neither institution was a public school. Furthermore, this experience would not have qualified for the waiver under any interpretation, given that the total time amounted to less than two years.

Stolov argues that the statutory definition of teacher supplied in section 168.104(7) cannot be applied to the waiver provision without effectively nullifying the phrase, "any other school system," in section 168.104(5), given that the definition of "teacher" requires, in part, that the individual be employed in a "school district."[5]

---

4. The parties also disagree about whether the "two or more years" language in section 168.104(5) allows the stacking of experience at various institutions to add up to a total of two years, or whether the two or more years must occur all at the same institution. While neither the Act nor case law provide any guidance on this issue, is it also one we need not decide in light of our determination that Stolov did not meet the statutory definition of "teacher" in his past instructional experience and fails to offer this Court a workable interpretation of the phrase "school system."

5. To support his argument that the definition of "teacher" set out in section 168.104(7) does not apply to the waiver provision, in

Thus, he advocates reading all of the requirements of a "teacher," as that term is defined in section 168.104(7), out of the waiver provision. By choosing the phrase, "any other school system," the legislature appears to have intended to mean something different than a "school district," a term defined in section 168.104(6) and used repeatedly throughout the Act. Therefore, the phrase, "any other school system," in section 168.104(5), and the word "teacher," as defined in section 168.104(7), are somewhat in conflict. However, we disagree that this conflict requires us to read all of the requirements for a "teacher" out of the waiver provision.

" 'The primary rule of statutory interpretation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning.' " *Hervey v. Mo. Dept. of Corr.*, 379 S.W.3d 156, 163 (Mo. banc 2012) (quoting *S. Metro. Fire Prot. Dist. v. City of Lee's Summit*, 278 S.W.3d 659, 666 (Mo. banc 2009)). If a statute is clear and unambiguous, the court should apply the statute in accordance with its plain and ordinary meaning and should not engage in statutory construction. *State v. Rowe*, 63 S.W.3d 647, 649 (Mo. banc 2002). If, however, a statute is ambiguous or uncertain (as is the case here), we must resort to the rules of statutory construction to determine the meaning of the statute and give effect to the legislature's intent. *Riordan v. Clark*, 67 S.W.3d 610, 613 (Mo. App. W.D.2001). In interpreting a statute, "all provisions must be harmonized and every clause given some meaning" because "[t]he legislature is presumed not to enact meaningless provisions." *Wollard v. City of Kansas City*, 831 S.W.2d 200, 203 (Mo. banc 1992).

■ The entirety of the waiver provision can be given meaning if we read the phrase, "any other school system," as merely eliminating the requirement that a "teacher" be an employee of a "school district," but leaving in place all other qualifications required for a "teacher." Reading section 168.104(5) in this way is consistent with the apparent intent of the Act.

The phrase, "school system," in the waiver provision does appear to be broader in scope than the phrase, "school district," as defined in section 168.104(6), and as used in the definition of "teacher." We believe it is possible that the legislature used the phrase, "school system," in the waiver provision to broaden the scope of the definition of "teacher" so as to include within the waiver those who otherwise meet the definition of "teacher," but whose experience was not in a "school district," as that term is defined in the Act. In fact, the definition of "teacher" and the definition of "school district" both specifically exempt employees in "a metropolitan school district." §§ 168.104(6)-(7). Therefore, it appears that the legislature's intent in using the phrase, "school system," in the waiver provision was to include those who otherwise meet the definition of "teacher," but whose experience was in a metropolitan school district, as that term is else-

---

addition to the conflict between the phrase "in any other school system" and the word "teacher," Stolov notes that section 168.104 contemplates that the definitions set out in that section will not always apply. Section 168.104 begins, "The following words and phrases when used in sections 168.102 to 168.130, except in those instances where the context indicates otherwise, mean...." While this language indicates that the legislature intended that these definitions may not always apply, the waiver provision at issue in this case appears in the definition of "probationary teacher," which begins "any teacher *as herein defined...*" (Emphasis added.)

where defined.[6] Interpreting the waiver provision in this way both gives meaning to the phrase "school system" and allows the statutory requirements for a "teacher" to apply, except to the extent that those requirements are inconsistent with the use of the phrase "school system" in the waiver provision.

Stolov's proposed interpretation, on the other hand, is both inconsistent with legislative intent and likely to lead to absurd results. His interpretation would require that the term "teacher" be read in a way that is wholly inconsistent not only with the definition of teacher in the Act but also with the legislature's intent in affording a waiver under only certain circumstances. In essence, Stolov advocates that we not only read the word "teacher," as it is defined in section 168.104(7), out of the waiver provision but also read the phrase "school system" extremely broadly. In fact, in his brief, Stolov suggests that the phrase "in any school system as a teacher," in the waiver provision, means any "experience elsewhere as a teacher." The effect of this approach would be to impose a waiver requirement on a school board any time a teacher has been employed at any institution in any instructional capacity.

The legislature laid out very stringent requirements for probationary teachers to become permanent: they must teach in the same school district for more than five successive years. § 168.104(4). It would be inconsistent with the intent of those requirements to waive one of the five years for a person who taught in a place that was neither part of a system nor even properly considered a school. Thus, we believe Stolov's interpretation is contrary to legislative intent.

Stolov's interpretation would also likely lead to absurd results. "Statutes should be construed in such a way as to avoid unreasonable or absurd results." *Great Rivers Habitat Alliance v. City of St. Peters,* 384 S.W.3d 279, 288 n. 7 (Mo.App. W.D.2012). Under Stolov's interpretation, *any* place wherein people, of any age, are educated in some manner would fall within "any other school system." This interpretation would read the word "system"—and potentially even "school"—out of the statute entirely. For example, would Stolov's prior teaching experience at UMKC qualify because UMKC is part of the University of Missouri school *system,* but experience at other *independent* colleges and universities, such as Harvard or Yale, would not? Also, under Stolov's proposed interpretation, his prior teaching experience at both the YMCA and YWCA would qualify despite the fact that neither of those institutions can properly be considered schools. While Stolov has explained what the phrase "school system" does *not* include, namely "school districts," he has not provided us with any meaningful explanation of what the phrase would mean if we adopted his approach. And we find his approach to be both inconsistent with legislative intent and likely to lead to absurd results.

In arguing that his past experiences qualified for the waiver, Stolov relies on a 1975 Attorney General Opinion, determining that the phrase, "in any other school

---

**6.** It may also be true that the phrase, "school system," is designed to cover those who taught in charter schools, which are still public schools, requiring certification and covering grades kindergarten through twelve, that are not necessarily within a traditional school district. The use of the more generic phrase "school system" may also be intended to allow experience teaching in the schools of another state, which may not be organized into subdivisions denominated "school districts," to satisfy the specific terms of the waiver provision.

system," as used in section 168.104(5), "includes any full-time teaching position,[7] whether inside or outside of Missouri and whether in public or private schools. It includes teaching service in a junior college, four-year college, or university and in a bona fide early childhood or preschool program." Op. Att'y Gen. 116–75 (1975). We do not find this opinion persuasive; in particular, we note that the Attorney General's Opinion does not cite to the statutory definition of a "teacher" found in section 168.104(7), but limits itself to an interpretation, in isolation, of the words "school system" in section 168.104(5).[8] And in so doing, the Opinion thus fails to heed the canon of statutory construction, explained above, requiring us to interpret a statute as a whole and give meaning where possible to *all* of its component parts.

Stolov also argues that the Act is remedial in nature and, thus, should be liberally construed. " '[Where] the statute is remedial ... it should be construed so as "to meet the cases which are clearly within the spirit or reason of the law, or within the evil which it was designed to remedy, provided such interpretation is not inconsistent with the language used ... resolving all reasonable doubts in favor of applicability of the statute to the particular case." ' " *State ex rel. LeFevre v. Stubbs,* 642 S.W.2d 103, 107 (Mo. banc 1982) (quoting *State ex rel. Brown v. Bd. of Educ.,* 294 Mo. 106, 242 S.W. 85, 87 (1922)). While we agree with Stolov that the Act was designed to both minimize "the vicissitudes to which teachers had in the past been subjected" and benefit schools "by providing such machinery as would tend to minimize the part that malice, political or partisan trends, or caprice might play" in dealing with teacher employment, *Lopez v. Vance,* 509 S.W.2d 197, 202 (Mo.App.1974), interpreting the waiver provision as Stolov suggests would not further·these goals. Rather, it would simply make it significantly less onerous for teachers with instructional experience outside of the public school system to achieve tenure. This does not appear to have been a goal of the Act.

Because Stolov's past experience was not "as a teacher," as "teacher" is defined in section 168.104(7), he did not qualify for the waiver provision of section 168.104(5). Thus, at the time of his non-renewal, he was a probationary, rather than a permanent, teacher, and, as such, he had no right to contract renewal or any of the additional procedural protections provided under the Act to permanent teachers before termination. *See Smith,* 990 S.W.2d at 646.

## Conclusion

The circuit court committed no error in granting the District's motion for summary judgment. Its decision is affirmed.

ALOK AHUJA, Presiding Judge, and ANTHONY REX GABBERT, Judge, concur.

---

**7.** At the time of the opinion, the waiver provision of section 168.104(5) applied to "any probationary teacher who has been employed in any other school system as a *full-time* teacher for two or more years." (Emphasis added.) The "full-time" language is no longer present.

**8.** *See Gershman Inv. Corp. v. Danforth,* 517 S.W.2d 33, 35 (Mo. banc 1974) (holding that, because the Attorney General is a member of the executive branch and lacks any judicial power to declare the law, "[h]is opinions may be persuasive to some and not to others," but, in any event, they are not binding on the courts).