# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-2930
_____

Argonaut Great Central Insurance Company

*Plaintiff - Appellant*

v.

Lincoln County, Missouri; Ryan J. McCarrick; Michael Merkel; Detective Patrick
Harney; Prosecuting Attorney Leah Wommack Chaney, Formerly known as Leah
Askey-Chaney; Russell Scott Faria

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: September 25, 2019
Filed: March 17, 2020
_____

Before SMITH, Chief Judge, BEAM and ERICKSON, Circuit Judges.
_____

BEAM, Circuit Judge.

Argonaut Great Central Insurance Company appeals the district court's[1] grant of judgment on the pleadings[2] in favor of Lincoln County, Missouri and several of its employees (collectively, "the county"). The dispute is regarding Argonaut's duty to defend the county against a civil rights lawsuit brought against the county by Russell Scott Faria, who is also a defendant in the instant lawsuit, but has simply joined the county's legal arguments by consent. We affirm.

## I.    BACKGROUND

On December 27, 2011, Faria's wife Betsy was murdered in their home in Troy, Missouri, suffering over 55 stab wounds including a knife stuck in the side of her neck. Faria alleges he arrived home around 9:30 that evening, found his wife and called 911. Records of the call indicate that Faria was hysterical and told dispatchers that he thought his wife (who was terminally ill with cancer) had committed suicide. The officer who arrived at the scene also found Faria to be crying and hysterical. After the officers secured the scene, Faria voluntarily went to the police station and also waived his Miranda rights before speaking to officers. The questioning at the Lincoln County jail and a polygraph test, which was administered at another location, took more than forty hours, and Faria was released from custody on December 29, 2011, around 4:30 p.m. The next relevant event that occurred was when the county filed criminal homicide and related charges against Faria on January 4, 2012. Officers arrested Faria on that date, and he remained in custody at the county jail until his trial in November 2013 because he could not procure bail money. Faria was convicted of murder in November 2013 and sentenced to life in prison, but while the appeal was pending, the Missouri Court of Appeals granted Faria's motion to remand

_____

[1]The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri.

[2]Due to the relief sought by the county, the district court applied the summary judgment standard in ruling on the county's motion.

for a new trial to account for newly discovered evidence. See Day v. Hupp, 528 S.W.3d 400, 404 (Mo. Ct. App. 2017) (noting the details of Faria's criminal proceedings in a civil life insurance policy dispute between Betsy Faria's daughters and Pam Hupp, a friend of Betsy's, who was named a beneficiary a few days before Betsy's death). Faria was retried in a bench trial and acquitted of the murder charge in November 2015.

In July 2016, Faria brought the underlying lawsuit alleging in Count I that a particular police officer (McCarrick) violated his Fourth Amendment rights by arresting him, seizing him and holding him without probable cause in December 2011. In Count II, Faria alleges McCarrick's second seizure and ultimate incarceration of him in January 2012 violated the Fourth Amendment. In Count III, Faria alleges the prosecuting attorney violated the Fourth Amendment for his second seizure and incarceration. In Count IV, he alleges the county conspired to violate his Fourth and Fourteenth Amendment rights by seizing him and denying him substantive due process. In Count V, he alleged malicious prosecution, but ultimately that count was dismissed without prejudice. In Count VI, he alleges a Monell[3] claim against the county based upon the prosecutor's actions in her official capacity. Within these counts are factual allegations that the various county actors fabricated evidence, ignored exonerating evidence, and failed to investigate another more obvious suspect, notably Pam Hupp, a woman who Betsy named as the new beneficiary of Betsy's life insurance policy in the days before her murder. See id.

Argonaut issued an insurance policy to Lincoln County, including its officers and employees, effective January 1, 2012, to December 31, 2013. In the policy, Argonaut agreed to indemnify the county when it was legally obligated to pay

---

[3]Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) (holding that when a government employee enforces the government's policy causing the constitutional injury, the government entity is liable under § 1983).

damages resulting from a covered wrongful act committed during the course and scope of law enforcement activities, or which arose out of the use of law enforcement premises while conducting law enforcement activities. The policy excluded coverage for claims arising from "dishonest, malicious, fraudulent or criminal act[s], . . . or a knowing violation of [the] law." The policy also noted that if another policy applied, the Argonaut policy would be "excess" coverage and Argonaut would have no corresponding duty to defend. As relevant, a public insurer called Missouri Public Entity Risk Management Fund (MOPERM) previously provided liability insurance coverage to the county, from January 1, 2011, through January 1, 2012. Finally, the Argonaut policy stated that it did not provide coverage for any act which an insured would otherwise have an exemption because of sovereign immunity.

Argonaut argued to the district court that it had no duty to defend because of exclusions in the policy for malicious conduct; because the relevant conduct occurred in 2011 before Argonaut was the insurer, making its policy in excess to the allegedly "primary" MOPERM policy; and because of the exclusion for possible governmental immunities. The district court disagreed and found that because Argonaut could not establish the impossibility of coverage, it had a duty to defend the county against Faria's lawsuit. The court found that Faria's complaint adequately pleaded that there were covered wrongful acts not barred by the exclusionary clauses. The court also found that the covered wrongful acts occurred during the time the policy was in effect. The court acknowledged that although the county began actively investigating Faria during the latter part of 2011, the damage to Faria triggering coverage–the criminal charges and arrest–did not happen until January 4, 2012, when the Argonaut policy was in effect. The court also found that the immunities clause did not excuse Argonaut from defending, because although the defendants had raised qualified and sovereign immunity defenses to Faria's suit, it was premature to know whether those defenses would be successful. Finally, the district court found that although Argonaut had a duty to defend the county against Faria's lawsuit, whether Argonaut had a corresponding duty to *indemnify* the county was yet to be determined based

-4-

upon the development of the facts at trial. Argonaut appeals the district court's decision regarding its duty to defend, which we distill into two primary arguments: whether there was a covered wrongful act, and whether the wrongful act occurred during the time the policy was in effect.

## II.    DISCUSSION

Missouri law applies to this diversity insurance dispute. The interpretation of an insurance policy is a question of law. Interstate Bakeries Corp. v. OneBeacon Ins. Co., 686 F.3d 539, 543 (8th Cir. 2012) (quotation omitted). An insurer's duty to defend a suit arises if there is potential or *even possible* liability to pay based upon the facts at the outset of the case. McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co., 989 S.W.2d 168, 170 (Mo. 1999). The duty to defend is analyzed by comparing the language of the policy with the allegations in the complaint, and if the complaint alleges facts that merely give rise to a potential claim within coverage, the insurer has a duty to defend. Id. at 170-71. The duty to defend is broader than the duty to indemnify. City of Lee's Summit v. Mo. Public Entity Risk Mgmt., 390 S.W.3d 214, 219 (Mo. Ct. App. 2012). We review the district court's rulings de novo. Id. at 218.

### A.    Wrongful Act

For the purposes of this appeal, insurance coverage activating Argonaut's duty to defend arises when there has been the possibility of (1) a covered wrongful act which (2) occurred during the time the policy was in effect. The Argonaut policy defines "wrongful act" as "any act, error or omission flowing from or originating out of a 'law enforcement activity.'" As previously noted, the policy excludes malicious acts and knowing violations of the law. It is these exclusions upon which Argonaut relies in asserting there was no "covered act." Indeed, Faria's eighty-three page civil rights petition has alleged numerous things against the county, including that the

county acted maliciously in knowing violation of the law. Further, Argonaut argues that Missouri public policy prohibits it from being liable to defend against intentional and malicious acts.

In support of its argument that there is no coverage for the type of "wrongful act" that occurred here, Argonaut cites Custom Hardware Engineering & Consulting, Inc. v. Assurance Co. of America, 295 S.W.3d 557 (Mo. Ct. App. 2009). In Custom Hardware, a company called StorageTek sued Custom Hardware, alleging it had violated copyright and unfair competition laws. In its petition, however, StorageTek only alleged intentional acts (copyright violations), and alleged nothing sounding in recklessness, error, or mistake. Id. at 562. The allegations were that "[Custom Hardware] has committed all of the alleged acts of infringement *deliberately, knowingly, willfully, maliciously and oppressively, without regard to StorageTek's proprietary rights*". Id. (alterations in original). Thus, the court found that the insurance company did not have to defend the lawsuit because the underlying suit only alleged intentional acts, which the court found were excluded from coverage under the insurance contract. Id. at 562-64.

Unlike the Custom Hardware case, however, Faria's petition also alleges that the defendants acted recklessly and incompetently during the investigation of Faria for murder. These claims would be included in coverage under the policy for actions committed by law enforcement officers and prosecutors during their normal law enforcement activities while investigating a murder. In each cause of action except the Monell policy allegation in Count VI, Faria set apart a separate section alleging that county employees were reckless and acted with reckless indifference to his constitutional rights. Thus, the "knowing" clause or the "malicious" clause, or both, cannot be the basis for preclusion of coverage because Faria affirmatively and additionally alleged recklessness in the lawsuit.

-6-

We disagree with Argonaut's claim, based upon Easley v. American Family Mutual Insurance Co., 847 S.W.2d 811 (Mo. Ct. App. 1992), that Missouri public policy requires the exclusion of coverage in this case. In Easley, a student was seriously injured by a fellow student following a school yard fist fight, but was more seriously injured than he otherwise would have been because the injured student fell backwards through a window and sustained severe cuts. After obtaining a judgment against the attacker, the injured student attempted to recover the judgment from the attacker's home owner's insurance policy. The court found that the insurance policy (which excluded coverage for "bodily injury . . . which is expected or intended by any insured"), as well as Missouri public policy, excluded coverage. Id. at 812. The court found that to decide otherwise would allow the attacker to "insure himself against his wanton, reckless or willful acts [which] would enable him to insure himself from bearing the consequences of his intentional acts and would, therefore, be contrary to public policy." Id. Argonaut argues that Easley stands for the proposition that Missouri public policy precludes any insurance policy from covering reckless, willful or intentional acts. Easley is readily distinguishable from the current situation. Here, the county procured insurance to shield itself against, among other things, possible constitutional claims against its officers and agents during the performance of their law enforcement duties. Such claims, normally brought pursuant to 42 U.S.C. § 1983, necessarily sound in recklessness, and counties would be uninsurable if Missouri insurance policies could only cover negligent conduct, as Argonaut claims. Argonaut's policy was procured to cover the kind of acts currently being alleged–"wrongful act[s]" arising out of "law enforcement activities."

Most importantly, because the standard for the duty to defend this lawsuit is whether there is any possibility of coverage, Argonaut cannot hurdle this high bar based upon the alleged absence of a covered wrongful act. There is certainly a possibility that the county acted recklessly or with reckless disregard for Faria's constitutional rights during the course and scope of their law enforcement activities

while investigating Betsy Faria's murder.  Accordingly, Argonaut cannot escape the duty to defend on this basis.

## B.     Occurrence During the Policy Period

Argonaut also argues the acts for which the county seeks coverage did not occur during the time the policy was in effect.  Argonaut asserts that since the murder occurred in 2011 and the investigation started at that time, its coverage, beginning on January 1, 2012, was not triggered.  Under Missouri law, an insurable event occurs when the victim is first damaged.  Am. Fam. Ins. Co. v. McMullin, 869 S.W.2d 862, 864 (Mo. Ct. App. 1994).  The county argues that Faria's alleged damage first occurred when he was arrested in early January 2012, citing Lee's Summit, 390 S.W.3d 214.  In Lee's Summit, a plaintiff in a suit against the city was charged and prosecuted for child molestation in 1998, but, after multiple trials, was ultimately acquitted in 2005.  At that point, plaintiff filed a civil rights claim against the city and several officials, and the insurance company (MOPERM) denied coverage because its policy was only in effect from 2004-2005.  The city sued MOPERM for wrongful refusal to defend and indemnify, but the court granted summary judgment to MOPERM, because the insurable events happened in the late 1990s and early 2000s, not during 2004-2005 when the policy was in effect.  The court stated, "injury begins to flow from when the complaint is filed" in such a case and the plaintiff "suffered injury when the charges were filed against him," and that did not occur when the policy was in effect.  Id. at 220, 222 (first quotation omitted).

In Count I, Faria alleges a constitutional violation based upon his initial "seizure," allegedly without probable cause, on December 28, 2011.  Argonaut alleges that this is the triggering event for coverage, and its coverage was not yet in effect.  However, the remaining counts all involve actions that occurred in 2012, including the most pertinent actions according to Lee's Summit–Faria's arrest and his charge of murder in January 2012.  Those specific actions occurred during the time

Argonaut's policy was in place starting January 1, 2012. Although Faria's Count I asks for redress of injuries that occurred before that time, it is worth noting that Faria went willingly to the police station and waived his <u>Miranda</u> rights in speaking to the police. He was released to go home on December 29, 2011, and if nothing further had occurred, Faria would likely not be bringing the current lawsuit. Injury, for purposes of Argonaut's duty to defend, first occurred "when the charges were filed against [Faria]." <u>Id.</u> at 222. Based upon the application of the <u>Lee's Summit</u> test for when damage occurs, Argonaut cannot show that there is no possibility that its coverage was in effect when Faria was damaged. Argonaut accordingly has a corresponding duty to defend the case.

## III. CONCLUSION

We affirm the district court's conclusion that Argonaut has a duty to defend the county against Faria's underlying § 1983 lawsuit.

ERICKSON, Circuit Judge, dissenting.

I agree with the majority that the duty to defend is determined by a comparison of the policy language with the allegations in the complaint. An analysis of the unambiguous policy language in conjunction with the complaint's allegations compels the conclusion that Argonaut does not have a duty to defend.

Argonaut's policy defines "wrongful act" as "any act, error or omission flowing from or originating out of a 'law enforcement activity.'" It also contains a "deemer" clause, which provides that "all acts, errors or omissions, committed by one or more insureds that are substantially the same or are in any way directly related–either logically, causally, or temporally–shall be deemed to constitute one 'wrongful act', regardless of the number of claims or claimants." Under the insuring agreement, Argonaut has "no duty to defend the insured against any 'suit' seeking 'damages' for

a 'wrongful act' to which this insurance does not apply." The insurance applies "only if the 'wrongful act' was *first* committed . . . during the policy period." (emphasis added).

Faria alleged, among other claims, that he suffered injuries beginning on the date of his first arrest and detention, which was December 28, 2011. It is indisputable that the arrest was a "law enforcement activity"[4] and a "wrongful act" alleged by Faria. It is apparent that the first wrongful act was not committed during Argonaut's policy period, but instead while MOPERM was the county's liability insurer. By ignoring the existence of the alleged first "wrongful act" and instead relying on when most of the alleged misconduct occurred, or when "the most pertinent actions" took place, or when the charges against Faria were filed, the majority has rewritten the terms of the policy.

It is axiomatic under Missouri law that so long as an underlying complaint includes allegations, even if inartfully drafted, that fit within an insurance policy's coverage, the duty to defend is triggered. Truck Ins. Exch. v. Prairie Framing, LLC, 162 S.W.3d 64, 83 (Mo. Ct. App. 2005). "Under Missouri law, in contract cases the language of the contract is [the court's] first–and often, [its] *only* – resort." Ferguson v. St. Paul Fire & Marine Ins. Co., No. WD 82090, 2019 WL 6703892, at *7 (Mo. Ct. App. Dec. 10, 2019), reh'g denied (Jan. 23, 2020). Because Faria has alleged injuries occurring during the time MOPERM provided liability insurance coverage to the county, Argonaut has no duty to defend according to the plain language set forth in the scope of its insuring agreement and because the policy contains an "other

---

[4]The policy defined "law enforcement activity" to mean the "administration of the criminal justice system and/or any act, error or omission of your law enforcement agency, its officials, officers, 'employees' or volunteers. 'Law Enforcement Activity' also includes the use, operation or maintenance of any premises by your law enforcement agency."

insurance" provision specifically informing the insured that it has no duty to defend if any other insurer has a duty to defend.

The majority in this case has failed to apply the plain language set forth in the insurance contract governing coverage to the allegations in the complaint. Rather than look to the language in the policy, the majority finds Lee's Summit dispositive. In Lee's Summit both the arrest and initiation of criminal charges occurred in April 1998. The city argued that MOPERM, which provided liability coverage from July 1, 2001, through January 1, 2006, had a duty to defend because the victim's claim for malicious prosecution did not arise until 2005 when the underlying criminal case was terminated in his favor. The MOPERM policy at issue in Lee's Summit broadly defined occurrence, in relevant part, as "an act, accident, event, during the coverage period that results in injury or damages." The Missouri court found that the injury/damages occurred at the time the criminal charges were filed in April 1998, which was also the date of arrest. Because both the facts and policy language distinguish Lee's Summit from this case, I find that case neither persuasive nor controlling. I would find Argonaut has no duty to defend based on the unambiguous policy language recited earlier.

_____