WOLLMAN, Circuit Judge.
The City of Council Bluffs, police officers Daniel Larsen, Lyle Brown, and David Dawson (collectively the City), and Curtis McGhee appeal from the district court’s order granting summary judgment to Chicago Insurance Company (CIC) and Columbia Casualty Company (Columbia), on CIC’s and Columbia’s declaratory judgment claims concerning coverage under various insurance policies. We affirm as to those policies in effect after 1977, but reverse as to Columbia’s 1977-78 policy.
I. Background
Many of the background facts are set forth in Genesis Insurance Co. v. City of Council Bluffs, 677 F.3d 806 (8th Cir.2012). We summarize them only briefly here. In 1977, McGhee and Terry Harrington were arrested for the murder of retired police officer John Schweer and were convicted on May 11, 1978, and August 4, 1978, respectively. McGhee and Harrington both received life sentences. In 2003, the Iowa Supreme Court concluded that “Harrington’s due process right to a fair trial was violated by the State’s *966 failure to produce ... police reports documenting the[ ] investigation of an alternative suspect in Sehweer’s murder.” Harrington v. State, 659 N.W.2d 509, 525 (Iowa 2003). McGhee and Harrington were released from prison later that year.
In 2005, McGhee and Harrington brought claims under 42 U.S.C. §§ 1983 and 1985(3) against, among others, the City, alleging violations of civil rights sounding in malicious prosecution. See Genesis, 677 F.3d at 808. The City sought coverage under the following insurance policies issued by CIC and Columbia: (1) two excess liability policies issued by CIC; (2) five special excess liability policies issued by Columbia; and (3) one commercial umbrella liability policy issued by Columbia.
A. CIC Excess Liability Policies
CIC issued the City two excess liability policies, one in effect from July 1, 1983, to July 1, 1984; and the other in effect from July 1, 1984, to July 1, 1985. The policies contain Endorsement 6, which reads:

POLICE PROFESSIONAL LIABILITY-FOLLOWING FORM

It is agreed that, except insofar as coverage is available to the Insured in the underlying insurance, this policy shall not apply to Personal Injury or Property Damage caused by Negligent Acts, Errors and/or Omissions of Police Officers including but not limited to[:] false arrest, erroneous service of civil papers, false imprisonment, malicious prosecution, assault and battery, libel, slander, defamation of character, violation of property rights, or deprivation of any rights, privileges or immunities secured by the Constitution and the laws of the United States.
Appellants’ App. 579.[1] The “underlying insurance” was issued by Admiral Insurance Company.[2] The relevant portions of the policies read:
INSURING AGREEMENT
In consideration of the payment of premium in reliance upon the statements herein or attached hereto, and subject to all of the terms of this policy, the Company(s) agrees with the Named Insured and will indemnify the Insured for ultimate net loss in excess of the retained limit hereinafter stated which the Insured shall become legally obligated to pay by reason of liability imposed by law, or liability assumed by contract, insofar as the Named Insured may legally do so, for damages because of:
COVERAGE D — PERSONAL INJURY LIABILITY
to which this policy applies, caused by an occurrence, during the policy period.
*967 Appellants’ App. 620. For purposes of Coverage D, the Admiral policies define an “occurrence” as “any injury or damage sustained during the policy term, by any person or organization and arising out of the personal injury as defined herein” and define “personal injury” as including “malicious prosecution[.]” Appellants’ App. 625.
B. Columbia Special Excess Liability Policies
Columbia issued the City five special excess liability policies: one in effect from August 8, 1977, to August 8, 1978; one in effect from August 8, 1978, to August 8, 1979; one in effect from August 8, 1979, to August 8, 1980; one in effect from August 8, 1980, to August 8, 1981; and one in effect from July 1, 1981, to July 1, 1982. These policies provide that Columbia “will indemnify the Insured for ultimate net loss in excess of the retained limit hereinafter stated which the Insured shall become legally obligated to pay as damages because of ... personal injury ... to which this policy applies, caused by an occurrence.” Appellants’ App. 762. These policies define “personal injury” as including “malicious prosecution” and define an “occurrence” as “an accident, including injurious exposure to conditions, which results, during the policy period, in personal injury or property damage neither expected nor intended from the standpoint of the Insured!)]” Appellants’ App. 765.
C. Columbia Commercial Umbrella Liability Policy
Columbia also issued the City a commercial umbrella liability policy, in effect from July 1, 1982, to July 1, 1983, which reads:
1. COVERAGE A — EXCESS LIABILITY INDEMNITY
The company will indemnify the insured for loss in excess of the total applicable limits of liability of underlying insurance stated in the schedule. The provisions of the [immediate underlying policy are, with respect to Coverage A, incorporated as a part of this policy, except for any obligation to investigate and defend and pay for costs and expenses incident to any of the same, the amounts of the limits of liability, an “other insurance” provision and any other provisions therein which are inconsistent with this policy.
2. COVERAGE B — EXCESS LIABILITY INDEMNITY OVER RETAINED LIMIT
The company will indemnify the insured, with respect to any occurrence not covered by underlying insurance, or with respect to damages not covered by underlying insurance but which result from an occurrence covered by underlying insurance, for loss in excess of the insured’s retained limit which the insured shall become obligated to pay as damages by reason of liability imposed upon the insured by law or assumed by the insured under any contract because of
personal injury, property damage, or advertising injury
to which this coverage applies, caused by an occurrence.
Appellants’ App. 828 (emphasis omitted). The policy defines “personal injury” as:
(1) bodily injury, shock, mental injury or mental anguish,
(2) false arrest, detention or imprisonment, wrongful entry or eviction or other invasion of private occupancy, malicious prosecution or humiliation; except that maliciously inflicted by, at the direction of, or with the consent of the insured[.]
*968 Appellants’ App. 844 (emphasis omitted). The policy defines an “occurrence” as:
(1) with respect to subsection (1) of the definition of personal injury and with respect to property damage, an accident, including continuous or repeated exposure to conditions, which results, during this policy period, in such personal injury or property damage neither expected nor intended from the standpoint of the insured. All loss arising out of continuous or repeated exposure to substantially the same conditions shall be considered as arising out of one occurrence,
(2) with respect to subsection[ ](2) ... of the definition of personal injury, an act or series of acts of the same or similar nature, committed during this policy period which causes such personal injury. All loss arising out of such act or series of acts, regardless of the frequency thereof or the number of claimants, shall be deemed to arise out of one occurrence!].]
Appellants’ App. 844 (emphasis omitted).
D. Declaratory Judgment Actions
CIC and Columbia filed declaratory judgment actions on the issue of coverage. On summary judgment, the district court rejected the “multiple triggers” coverage theory; denied the use of extrinsic evidence for contract interpretation or contract construction purposes; and determined that only the 1977-78 Columbia special excess liability policy potentially provided coverage. As to that policy, the district court concluded that because the alleged malicious prosecution was not caused by an accident and did not result in unexpected or unintended personal injuries, that policy was inapplicable. The district court accordingly granted CIC and Columbia summary judgment on each of the policies.
II. Discussion
We review de novo the district court’s grant of summary judgment, “applying the same standards as the district court and viewing the evidence in the light most favorable to the nonmoving party.” Zike v. Advance Am., Cash Advance Ctrs. of Mo., Inc., 646 F.3d 504, 509 (8th Cir.2011) (quoting Travelers Prop. Cas. Co. of Am. v. Gen. Cas. Ins. Cos., 465 F.3d 900, 903 (8th Cir.2006)). “The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed. R.Civ.P. 56(a).
“The parties agree that Iowa law governs this diversity action. Under Iowa law, a court must construe insurance policies to give effect to the intent of the parties.” Genesis, 677 F.3d at 811 (quoting R & J Enterprizes v. Gen. Cas. Co. of Wis., 627 F.3d 723, 726 (8th Cir.2010)).
The rules of construction of insurance policies [under Iowa law] are well established. The insurance policy is a contract which must be construed as a whole. The words used must be given their ordinary, not technical, meaning to achieve a practical and fair interpretation. Youngwirth v. State Farm Mut[.] Auto. Ins. Co., [140 N.W.2d 881, 884 (Iowa 1966) ].
If the words are fairly susceptible to two interpretations the one which will sustain the insured’s claim will be accepted. Thus the policy will be strictly construed against the insurer. State Auto. & Cas. Underwriters v. Hartford Acc[ident] & Ind[em.] Co., [166 N.W.2d 761, 763 (Iowa 1969) ]. This rule is amplified by the statement that the court should ascertain what an insured as a *969 reasonable person would understand the policy to mean, not what the insured actually intended. Goodsell v. State Auto[.] & Cas. Underwriters, [153 N.W.2d 458, 461 (Iowa 1967) ].
Stated otherwise, the climate under which an insurance policy is examined favors imposition of coverage largely because the carrier drew the contract and has the expertise in the field. However, if after construing both the policy in question, the pleadings of the injured party and any other admissible and relevant facts in the record, it appears the claim made is not covered by the indemnity insurance contract issued, the insurer has no duty to defend or indemnify. Hagen Supply Corp. v. Iowa Nat[’l] Mut[.] Ins. Co., [331 F.2d 199, 203-04 (8th Cir.1964),] and authorities cited therein. If such be the case, the words and phrases of the policy should not be strained to impose liability that was not intended and not purchased.
Cent. Bearings Co. v. Wolverine Ins. Co., 179 N.W.2d 443, 445 (Iowa 1970), quoted in Genesis, 677 F.3d at 811. “Insurance disputes are particularly well suited for summary judgment because the proper construction of an insurance contract is always an issue of law for the court.” Genesis, 677 F.3d at 811 (quoting Modem Equip. Co. v. Cont’l W. Ins. Co., 355 F.3d 1125, 1128 (8th Cir.2004)).
The City [and McGhee] ha[ve] the initial burden of proving that [Harrington’s and McGhee’s] disputed claims are comprehended by the policy’s general coverage provisions. Once this burden is met, [CIC and Columbia] must in turn prove the applicability of any exclusion which allegedly precludes coverage. Thereafter, the burden ... shifts back to [the City and McGhee] to prove, if applicable, any exception to the exclusion.
Id. (third alteration and omission in original) (internal quotation marks and citations omitted).
A. Extrinsic Evidence
The City and McGhee argue that the district court should have considered extrinsic evidence concerning the parties’ intent and that the district court should have granted their motions for discovery of additional, related extrinsic evidence. We review de novo the district court’s interpretation of state law. Super Wings Int’l, Ltd. v. J. Lloyd Int'l, Inc., 701 F.3d 870, 873 (8th Cir.2012).
 Under Iowa law, the admissibility of extrinsic evidence depends on the purported purpose of the evidence, that is, contract interpretation or contract construction. Contract “[interpretation involves ascertaining the meaning of contractual words; [contract] construction refers to deciding their legal effect.” Peak v. Adams, 799 N.W.2d 535, 543 (Iowa 2011) (quoting Fashion Fabrics of Iowa, Inc. v. Retail Investors Corp., 266 N.W.2d 22, 25 (Iowa 1978)). Though admissible for interpretation purposes, see Pillsbury Co. v. Wells Dairy, Inc., 752 N.W.2d 430, 436 (Iowa 2008), extrinsic evidence is admissible for construction purposes only when the contract is ambiguous, see Peak, 799 N.W.2d at 543.
The City and McGhee do not identify what policy terms the extrinsic evidence would aid in interpreting. Instead, they argue generally that the extrinsic evidence would establish that the parties “believed and intended that coverage be provided.” Appellants’ Br. 32. This, however, is an improper attempt “to alter the meaning of the contract, not to facilitate its interpretation[.]” See Mid-Am. Real Estate Co. v. Iowa Realty Co., 406 F.3d 969, 973 (8th Cir.2005) (applying Iowa law). Nor do the City and McGhee *970 identify any ambiguity that the extrinsic evidence would resolve. “In the construction of written contracts, the cardinal principle is that the intent of the parties must control, and except in cases of ambiguity, this is determined by what the contract itself says.” Peak, 799 N.W.2d at 543 (quoting Iowa R.App. P. 6.904(3)(n)). Accordingly, the district court correctly refused to consider and correctly denied additional discovery of the extrinsic evidence.
B. Multiple Triggers
The City and McGhee argue that coverage is available under each of the CIC and Columbia policies because McGhee’s and Harrington’s alleged injuries and damages span the duration of their imprisonment.
Following the district court’s grant of summary judgment in the present action, our court decided Genesis, which, as described above, was a related action concerning whether two insurance policies issued by Genesis Insurance Company (Genesis) afforded coverage to the City for liability arising from McGhee’s and Harrington’s claims. 677 F.3d at 808-10. The Genesis policies provided coverage for losses “because of ... personal injury ... which occur[ed] during this policy period[.]” Id. at 809 (emphasis omitted). The “personal injury” had to have been “caused by an occurrence[,] and the occurrence must [have] take[n] place in the coverage territory.” Id. The policies defined an “occurrence” as “an offense or series of related offenses” and defined “offense” as “any of the offenses included in the definition[ ] of ... personal injury.” Id. at 810. And, the policies defined “personal injury” as including “injury ... arising out of ... malicious prosecution[.]” Id. at 809. Thus, to be entitled to coverage, the City was required to prove that at least one of either “Harrington or McGhee [was] seeking damages for an injury ... arising out of malicious prosecution or a civil rights violation, that occur[red] during [the] policy period.” Id. at 812 (omission and second and third alterations in original) (internal quotation marks and citations omitted). Because the court predicted that the Iowa Supreme Court would hold that “the tort of malicious prosecution occurs, for insurance purposes, on the date the underlying charges are filed[,]” the court concluded that the policies offered no coverage for McGhee’s and Harrington’s claims. Id. at 816 (quoting City of Erie, Pa. v. Guar. Nat’l Ins. Co., 109 F.3d 156, 165 (3d Cir.1997)).
The City and McGhee of course recognize the holding in Genesis, but argue that the CIC and Columbia policies contain different language that yields different results.[3] They argue that the Columbia policies, unlike the Genesis policies, require only that some injury arise during the policy period, and that the injury need not occur first during the policy period. Similarly, they argue that the CIC policies require only that some injury or damage arise sometime during the policy period. They further argue that because McGhee and Harrington allege injuries and damages spanning the duration of their imprisonment, the CIC and Columbia policies provide coverage.
We see no meaningful distinction between the Columbia policies that would necessitate a result different from that reached in Genesis. The Columbia policies require that the alleged injuries have been *971 sustained during the respective policy coverage periods. The holding from Genesis — that “Harrington’s and McGhee’s injuries ‘occurred,’ for insurance purposes, in 1977” and “did not ‘occur,’ for insurance purposes, [between 2002 and 2004]” — is equally forceful when applied to the Columbia policies. Id. at 815. Indeed, the City’s contention that “there are allegations of continuing misconduct and continuing personal injury during the terms of the ... policies” was expressly rejected in Genesis. See id. (“But we reject the contention that ‘the tort of malicious prosecution constitutes a continuing injury.’ ” (quoting City of Erie, 109 F.3d at 164)); see also Royal Indem. Co. v. Werner, 979 F.2d 1299, 1300 (8th Cir.1992) (explaining that for purposes of malicious prosecution insurance coverage, the term “personal injury” was “more likely intended to describe the time when harm begins to ensue, when injury occurs to the person, that is, ... when the relevant law suit is filed”).
We also conclude that the CIC policies are controlled by Genesis. The CIC policies, by virtue of the Admiral policies, define an occurrence as “any injury or damage ... arising out of the [malicious prosecution.]” The City and McGhee contend that because, unlike the policies in Genesis, the CIC policies define an occurrence as “any ... damage[,]” the CIC policies are triggered by the damages alleged by McGhee and Harrington from their imprisonment while the CIC policies were in effect. The issue whether McGhee’s and Harrington’s imprisonment could constitute “damage” contemplated by the CIC policies aside, this theory is essentially the same “multiple trigger” approach to the tort of malicious prosecution that was rejected in Genesis. In Genesis, our court explained:
[I]n malicious prosecution cases, there is no interval between arrest and injury that would allow an insurance company to terminate coverage. The plaintiff faces incarceration, humiliation, and damage to reputation as soon as charges are filed. Perhaps for this reason, no federal or state court has adopted the multiple trigger theory in malicious prosecution cases.
677 F.3d at 815-16 (quoting City of Erie, 109 F.3d at 165).
We also reject the City and McGhee’s arguments that rely on extrinsic evidence, see supra Section 11(A), as well as their arguments of ambiguity, see Genesis, 677 F.3d at 815 (“Although the City and Genesis ‘disagree about the terms of their insurance policies, disagreement between the parties over the proper interpretation of a contract does not necessarily mean that a contract is ambiguous.’ ” (quoting City of Erie, 109 F.3d at 163)).
Accordingly, we consider only whether the Columbia special excess liability policy in effect from August 8, 1977, to August 8, 1978, remains potentially applicable, because the alleged malicious prosecution and resulting personal injuries occurred when the underlying charges were filed against McGhee and Harrington, in 1977.
C. 1977-78 Columbia Special Excess Liability Policy
The City and McGhee argue that the district court erred in concluding that the 1977-78 Columbia special excess liability policy offered no coverage. The policy covers losses incurred as a result of damages from malicious prosecution that are “caused by an occurrence” and defines an occurrence as “an accident, including injurious exposure to conditions, which results, during the policy period, in personal injury ... neither expected nor intended from the standpoint of the Insured[.]” Appellants’ App. 762, 765.
*972 The City and McGhee argue that, although McGhee’s and Harrington’s alleged injuries were intentional, not accidental, coverage should nonetheless be afforded under the reasonable expectations doctrine.[4] “Under the reasonable expectations doctrine, ‘the objectively reasonable expectations of applicants and intended beneficiaries regarding insurance policies will be honored even though painstaking study of the policy provisions would have negated those expectations.’ ” Johnson v. Farm Bureau Mut. Ins. Co., 533 N.W.2d 203, 206 (Iowa 1995) (quoting Clark-Peter-son Co. v. Indep. Ins. Assocs., Ltd., 492 N.W.2d 675, 677 (Iowa 1992)). The doctrine applies when an exclusion “(1) is bizarre or oppressive, (2) eviscerates terms explicitly agreed to, or (3) eliminates the dominant purpose of the transaction.” Boelman v. Grinnell Mut. Reinsurance Co., 826 N.W.2d 494, 506 (Iowa 2013) (quoting Clark-Peterson, 492 N.W.2d at 677). “For the doctrine to apply, a prerequisite must first be satisfied!:] ‘[t]he insured must prove circumstances attributable to the insurer that fostered coverage expectations or show that the policy is such that an ordinary layperson would misunderstand its coverage.’ ” Id. (emphasis omitted) (quoting Nationwide Agri-Bus., 782 N.W.2d at 473).
The City and McGhee rely on Clarkr-Peterson, where the plaintiff became liable in another suit for damages arising from intentional discrimination and sought coverage under an insurance policy. 492 N.W.2d at 676. Despite defining “personal injury” as including “discrimination[,]” the policy effectively eliminated such coverage by requiring that any occurrence “unexpectedly or unintentionally result! ]” in the personal injury, and by excluding coverage of discrimination “committed by or at [the insured’s] direetion[.]” Id. at 676-77 & n. 3. The Iowa Supreme Court held that the plaintiff was entitled to coverage under the reasonable expectations doctrine because an ordinary layperson would expect coverage under these circumstances and because a holding of no coverage would “eviscerate[ ] terms explicitly agreed to.” Id. at 677-79. The court explained:
To deny discrimination coverage in the present case would be to withdraw with the policy’s left hand what is given with its right. In a fundamental sense, of course, this is the proper function of any exclusion clause in an insurance policy. The reasonable expectations doctrine does nó violence to this proper function by its limited intrusion into it. The doctrine means only that when, within its metes and bounds definition, an exclusion acts in technical ways to withdraw a promised coverage, it must do so forthrightly, with words that are, if not flashing, at least sufficient to assure that a reasonable policy purchaser will not be caught unawares.
The reasonable expectations doctrine is a recognition that insurance policies are sold on the basis of the coverage they promise. When later exclusions work to eat up all, or even substantially all, of a vital coverage, they cannot rest on technical wording, obscure to the average insurance purchaser. At some point fairness demands that the coverage clause itself be self-limiting. Clark-Peterson’s claim could not have arisen if the coverage promised in the coverage clause had been clearly worded so as to extend coverage only as far as the insurer contends it does extend. The difficul *973 ty arises because a much broader coverage is promised, but an attempt is made to withdraw it in violation of the doctrine of reasonable expectations.
Id. at 679.
The 1977-78 Columbia special excess liability policy technically excludes expected damages arising from intentional acts; nevertheless, given the policy’s express inclusion of coverage for damages arising from “malicious prosecution!,]” we conclude that an ordinary layperson would have misunderstood the policy’s scope of coverage. See id. at 678 (“We also think the answer is clearly yes, that an ordinary layperson could expect coverage. The policy purports to provide some discrimination coverage; the insured here seeks coverage for an unusual and controversial liability, liability which no doubt came as a shock to it.” (footnote omitted)). In addition, enforcement of the Columbia policy’s requirement that personal injuries be caused by “an accident” and result in personal injuries “neither expected nor intended from the standpoint of the insured” would effectively “eviscerate! ] terms .explicitly agreed to,” namely, coverage for damages arising from malicious prosecution — an intentional tort. See Wilson v. Hayes, 464 N.W.2d 250, 259 (Iowa 1990) (elements of a malicious prosecution claim). Columbia’s speculation that the policy provisions could, under some circumstances, be harmonized so as to provide coverage for damages arising from malicious prosecution, is unpersuasive, for “evisceration can occur on something less than total obliteration of all possibilities of coverage.” See Clark-Peterson, 492 N.W.2d at 678.
Because the reasonable expectations doctrine applies to the facts of this case, the City is entitled to coverage under the 1977-78 Columbia special excess liability policy. In light of this holding, we need not address the City and McGhee’s alternate argument that the policy is ambiguous.
III. Conclusion
We affirm the district court’s judgment that the following policies do not afford coverage to the City for McGhee’s and Harrington’s malicious prosecution claims: the two excess liability policies issued by CIC; four of the special excess liability policies issued by Columbia; and the commercial umbrella liability policy issued by Columbia. As to the 1977-78 special excess liability policy issued by Columbia, we reverse the district court’s judgment regarding the applicability of the reasonable expectations doctrine. The case is remanded to the district court for further proceedings.

. We agree with the district court that, notwithstanding the absence of the word "exclusion," Endorsement 6 is clear, explicit, and enforceable. See, e.g., Essex Ins. Co. v. Field-house, Inc., 506 N.W.2d 772, 776-77 (Iowa 1993) (exclusions contained in "endorsements” were valid and enforceable). See generally Nationwide Agri-Bus. Ins. Co. v. Goodwin, 782 N.W.2d 465, 470 (Iowa 2010) ("An exclusion that is clear and unambiguous must be given effect.” (quoting Farm & City Ins. Co. v. Gilmore, 539 N.W.2d 154, 157 (Iowa 1995))).

. According to the City, Admiral issued the City six policies, in effect for various one-year periods from 1979 to 1985, under which the City seeks coverage. Appellants' App. 611, 618-51. Admiral is not a party to this case; the City has filed a declaratory judgment action seeking coverage against Admiral in the Southern District of Iowa, which currently remains pending. See City of Council Bluffs v. Admiral Ins. Co., No. 4:11-cv-00061-RP-TJS (S.D.Iowa).

. To the extent the City and McGhee challenge Genesis, we note that "[i]t is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel.” Sisney v. Reisch, 674 F.3d 839, 843 (8th Cir.2012) (quoting Owsley v. Luebbers, 281 F.3d 687, 690 (8th Cir.2002)).

. Although the district court found the City and McGhee’s argument concerning the reasonable expectation doctrine not to be sufficiently supported with explanation or analysis, see D. Ct. Order of Mar. 12, 2012, at 34, we conclude that the argument was sufficiently developed to merit consideration on appeal.